**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LEONARD KNEPP**

       **Plaintiff,**

  **-against-**          **08-CV-1062**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION**

## I. INTRODUCTION

Plaintiff brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), appealing a final decision of the Commissioner of Social Security denying Plaintiff's claim for Social Security benefits.  The matter is now before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## II. PROCEDURAL BACKGROUND

On February 22, 2006, Plaintiff filed an application for Supplemental Security Income ("SSI") as provided for in Title XVI of the Social Security Act ("Act").  Plaintiff claims that he was disabled as of 1990 due to osteoarthritis of the knees, low back pain,

1

obesity, undifferentiated somatoform disorder, and a personality disorder.[1] (R. 61-64, 87-88). The application was denied. (R. 41-44). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. 52).  On June 23, 2008, after reviewing the case *de novo*, ALJ Carl E. Stephan found that Plaintiff was not disabled during the period at issue. (R. 7-23). This decision became the final decision of the Commissioner on August 28, 2008 when the Appeals Council denied Plaintiff's request for review. (R. 3-5). This action followed.

### III.    FACTUAL BACKGROUND

#### a. Nonmedical Evidence

Plaintiff was born in 1963 and is a high school graduate. (R. 92, 365).  From March 1995 through November 1996, Plaintiff worked as a janitor. (R. 88). The heaviest weight lifted by Plaintiff at this job was fifty pounds. (R. 89).  At the time of his hearing, Plaintiff's source of income was public assistance. (R. 365). Plaintiff alleged he became disabled in 1990 due to osteoarthritis of the knees, low back pain, obesity, undifferentiated somatoform disorder, and a personality disorder. (R. 87-88). He claimed that these illnesses prevented him from standing for long periods of time, walking long distances and using stairs. (R. 95, 99, 116, 118, 371-72). Plaintiff also claimed he spent the majority of his days sitting or laying on his couch. (R. 95, 371). He claimed he could only walk for five minutes at a time. (R. 100).  He used a cane that was given to him by a friend. (R. 100). Plaintiff used Extra Strength Tylenol for back pain. (R. 369).  He did not receive medical treatment for his back pain. (R. 372).  He asserted at the hearing that he feels pain if he

---

[1]It should be noted that the claimant previously filed an application for SSI benefits on October 7, 2002 which was denied at the hearing level on February 24, 2004.

sits for more than 20 minutes without getting up to stretch his legs. (R. 371-72).  Plaintiff, who lived alone, cared for his personal needs, washed dishes, cooked once a day "or so," did his laundry in the sink or bath tub, and food shopped once per month. (R. 96-97, 118, 364). Plaintiff, who never obtained a driver's license, had a friend drive him from place to place. (See R. 97-98, 364-65).

### b.  Medical Evidence[2]

On November 17, 1998, Knepp started treatment with Nurse Practitioner Verna Pedersen at the Champlain Valley Physicians Hospital ("CVPH") Health Center. He reported a one-year history of increasing back pain and bilateral knee pain, asserting that he was  tender at T8-10 and describing pain that shot from that level down his spine into his right hip. Upon examination, NP Pedersen noted that both knees were slightly edematous, tender to touch diffusely, mildly erythematous and warm to the touch (R: 169). An MRI of January 26, 1999 showed a small joint effusion, torn meniscus to left knee (R:167).  An MRI of January 28, 1999 of Plaintiff's right knee showed a complex tear involving posterior horn of his  meniscus (R: 168).  On February 24, 1999, NP Pedersen noted that Plaintiff's orthopedist suggested that "physical therapy and [an] anti-inflammatory approach would probably resolve his problem."  (R: 166).

In November 1999, NP Pedersen did an "Examination for Employability Assessment, Disability Screening, and Alcohol/Drug Addiction Determination"  for the New York State Office of Temporary and Disability Assistance. She determined that Plaintiff was moderately limited in walking, standing, sitting, lifting, carrying, and climbing stairs;

---

[2] Although SSI is not ·payable prior to the month following the month in which the application was filed (20 CFR 416.335), the ALJ considered the complete medical history consistent with 20 CFR 416.912(d).

moderately limited in understanding and remembers instructions; very limited in maintaining basic standards of personal hygiene and grooming; and very limited in being able to function in a work setting at a consistent pace.

A May 17, 2001 MRI showed disc degeneration at L4-L5, small central protrusion at L4-5, mild degeneration and very small central disc protrusion at L5-S1, and some degenerative changes in facets of L4-5 and L5-S1 (R: 150).  On October 30, 2001, NP Pedersen completed another Medical Examination for Employability Assessment. She stated that Knepp was very limited in walking, standing, pushing, pulling, bending, climbing stairs, grooming and hygiene, and ability to function at consistent pace. She determined that he was moderately limited in lifting and carrying and in maintaining socially appropriate behavior without exhibiting behavior extremes (R: 183). In May 2002, NP Pedersen performed yet another Medical Examination for Employability Assessment, concluding that Plaintiff was moderately limited in walking, standing, sitting, lifting, carrying, stairs; moderately limited in understanding and remembers instructions, carrying out instructions, maintaining attention/concentration, making simple decisions, interacting appropriately with others, and maintaining socially appropriate behavior without exhibiting behavior extremes; and very limited in maintaining basic standards of personal hygiene and grooming, and being able to function in a work setting at a consistent pace (R: 180).

On July 30, 2002, Michelle LaDuke, RN, interviewed Knepp for Clinton County Department of Social Services benefits.  She noted that Plaintiff complained of knee and back pain and that it hurt to bend or sit in a chair; that he could not stand, walk or sit for prolonged periods; that he could not  get in or out of bath tub; that he walked with a cane; that he claimed that his laundry is hard to do because he washes clothes in his sink or tub;

that he claimed that he is not able to climb stairs; that he cannot stand for long periods and therefore has trouble cooking; that he can only sit at his computer for 20 minutes at a time; that he needs to lay down often; that he only shops once a month; that he has become increasingly isolated and does not desire to leave his apartment; that he does not trust his neighbors; and that he becomes fearful when a car pulls up outside his apartment.

On August 5, 2002, Dr. Stephane Mulligan noted that Plaintiff complains of knee pain and, despite a tear of his meniscus, did not want a surgery (R: 123).

On September 7, 2002, NP Pedersen completed a Medical Report for Determination of Disability to Clinton County Department of Social Services. She diagnosed morbid obesity, deconditioning, chronic knee pain, and found that Plaintiff could not do repetitive stooping and bending, cannot climb, cannot crouch or squat, is overweight, complains of knee pain, and that he appears that he would not respond appropriately to co-workers and supervision.  NP Pedersen encouraged Plaintiff to remain active by walking, and concluded: "He's not sick, just overweight and deconditioned." (R: 174 - 175).

In October 2002, Plaintiff filed an application of SSI.  On November 7, 2002, Dr. Pulver performed a consultative exam for Social Security. He noted a diagnosis of arthritis of both knees, low back pain, morbid obesity, and noted moderate restriction for standing and walking and marked restriction for squatting and kneeling (R: 124- 126).

On December 9, 2005, Dr. Richard Liotta, a licensed psychologist, performed a consultative examination for DSS. (R. 209-216). He noted that Knepp complains of significant chronic pain and reported osteoarthritis.  Knepp felt that his doctors are lying to

him and could not see his real problems.  Dr. Liotta noted that Plaintiff: does not drive;

does not know if he has problems with depression and anxiety; feels his problems are

physical and others do not understand them; worries about his physical condition; appears

dependent on others and feels helpless; does not appear severely depressed; spends

most of his time on the couch; will do some things on the computer, but does not like

sitting in chairs for very long; contends he needs to be lying down to get relief much of the

time; has limited overall insight; and is very preoccupied with his physical condition but

does not want to consider that there is a psychiatric component to his difficulties. Dr. Liotta

concluded that Knepp had a rather negative attitude, and that his physical complaints and

resulting social and occupational limitations appeared to be in excess of what would be

expected from his medical records.  Dr. Liotta diagnosed Plaintiff with an undifferentiated

somatoform disorder, a personality disorder with avoidant features, and Global

Assessment of Functioning score of 45 with symptoms of serious impairment in social and

occupational functioning. (R. 215-16).

On February 24, 2006, Administrative Law Judge Carl E. Stephan found that

Plaintiff was not disabled during the period at issue in his October 2002 application for

SSI. Plaintiff filed his current application for SSI on February 22, 2006.

On April 17, 2006, Plaintiff was examined by David Frostiuc, a certified physician's

assistant. (R: 254-63). Mr. Frostiuc noted that Plaintiff had a full range of motion in both

knees. (R: 256).  Noting Plaintiff's weight and long standing complaints of bilateral knee

pain, Mr. Frostiuc opined that Plaintiff could occasionally lift up to thirty pounds, stand

and/or walk for up to two hours per day and had no sitting limitations. (R: 254-56, 258,

261). He also opined that Plaintiff had no limitations with understanding, memory,

sustained concentration and persistence, social interaction or adaption. (R:  262).  On May

9, 2006, David Frostiuc, PA, again examined Plaintiff and noted bilateral knee pain, with

myalgias and arthalgias (R: 254).

Plaintiff was examined by Dr. Brett T. Hartman, a consultative psychiatrist, in May

2006. (R: 221-25). Dr. Hartman's mental status examination revealed that Plaintiff was

cooperative but exhibited an odd social presentation. (R: 222). Plaintiff's speech was

fluent and clear, and his thought processes were coherent and goal directed. His affect

was restricted, but he was alert and oriented. (R: 223).  Insight and judgment were fair. Id.

Plaintiff reported that he was able to care for his personal needs, cook, clean and do

laundry on his own. Id.  He shopped once per month and stated that he was able to

manage his money fairly well. Id.  He spent his time watching television, working on his

computer and trying to keep weight off his knees. Id. With regard to Plaintiff's vocational

abilities, Dr. Hartman concluded that Plaintiff was able to follow and understand simple

directions and instructions. (R:  224). He also had a fair ability to learn new tasks and

make appropriate decisions. Id.  Plaintiff had mild attention and concentration problems

and mild difficulty maintaining a regular schedule. Id. Dr. Hartman also opined that Plaintiff

would likely have mild to moderate difficulty dealing appropriately with the normal

stressors of life. Id.

With regard to Plaintiff's vocational abilities, Dr. Hartman concluded that Plaintiff

was able to follow and understand simple directions and instructions. (R:  224). He also

had a fair ability to learn new tasks and make appropriate decisions. Id. Plaintiff had mild

attention and concentration problems and mild difficulty maintaining a regular schedule. Id.

Dr. Hartman also opined that Plaintiff would likely have mild to moderate difficulty dealing

appropriately with the normal stressors of life. Id.

On the same day, Plaintiff was orthopedically examined by Dr. Nader Wassef, also a consultative examiner. (R: 226-29).  On physical examination, Dr. Wassef noted that Plaintiff's grip strength was five out of five ("5/5") bilaterally. (R: 227). Plaintiff's spine had a normal range of motion as did all of his extremities. (R:  227-28). There was no muscle atrophy and no sensory abnormality. ((R:  228).  An x-ray of the knee was normal, prompting Dr. Wassef to opine that Plaintiff's knee pain "etiology was not very clear to [him]."  Id. Based on his examination, Dr. Wassef was not able to detect evidence of physical limitations in the hand, spine or any of the extremities. Id.

In May 2006, Dr. Richard B. Weiss, a State agency physician, reviewed the record, noting both somatoform and personality disorders found in Listings 12.07 and 12.08, and opined that Plaintiff had only mild restrictions of daily living and mild difficulties in maintaining social functioning.  (R: 236, 246, 250, 252). He also had moderate, not marked, difficulties in maintaining concentration persistence or pace. (R: 246, 250). Plaintiff had no episodes of deterioration. Id. In a narrative, Dr. Weiss opined that while Plaintiff had somatoform disorder and personality disorder, these impairments did not result in marked limitations. (R:  252). He further opined that Plaintiff was able to understand, remember, and carry out simple instructions. Id. Plaintiff was able to interact appropriately with co-workers and supervisors and make simple decisions. Id. Dr. Weiss concluded that Plaintiff was not markedly impaired in his ability to maintain attendance and pace or to complete a normal workweek secondary to his psychiatric symptoms. Id.

On March 29, 2007, David Frostiuc, PA, noted that Mr. Knepp refused to consider physical therapy and noted that Plaintiff was gaining weight (R: 359).

On June 12, 2007, Plaintiff was examined by Dr. Eugene Byrne at the Lake Placid Health Center for complaints of left knee pain. (R. 15, 276-77).  On examination, the left knee had no significant swelling. (R. 276). While the knee had tenderness in the medial and lateral joint and the peripatellar area, the neurologic exam was intact to light touch in the left leg. Id. The knee was grossly neurovascularly intact. Id. Strength in the quadriceps was just about full and hamstrings strength was full as well. Id.  An x-ray of the left knee revealed no fractures and evidence of early arthrosis in the patellofemoral joint. Id. Dr. Byrne recommended Plaintiff start physical therapy, take Aleve as needed, and use a pull-on brace for support. (R. 277).

On February 22, 2008, Michelle LaDuke, RN, from the disability review team at Clinton County DSS, wrote a letter to the "Office of Hearing Appeals" regarding Plaintiff's impairments.  She opined that Knepp is difficult to work with, that he is adamant that his problem is with knees and back osteoarthritis and that he has no mental health issue, and that he avoids many things. She notes that Plaintiff has failed to follow through with any of the treatment recommendations from his medical providers for his physical conditions. She also notes that Plaintiff has refused mental health treatment, he is in jeopardy of being evicted because of a strong smell of body odor coming from his apartment, and that he excess clutter in his apartment to the extent that cannot walk around his apartment. (R: 266- 267).

## IV.    STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g).  First, the Court must determine whether the Commissioner applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999);

Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 9 (2d Cir. 1990); Shane v. Chater, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court reviews whether the Commissioner's findings are supported by substantial evidence within the administrative record.  See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 9; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  The Commissioner's finding will be deemed conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g); see also, Perez, 77 F.3d at 46; Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).  Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations.  See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir.1 982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

## V.     DISABILITY DETERMINATION - THE FIVE STEP EVALUATION PROCESS

Plaintiff claims that he is entitled to benefits due to disability as provided for in Title XVI of the Act.  Since the term "disability" has essentially the same definition for both programs, the case law interpreting the meaning of "disability" under Title II is applicable to a determination of disability under Title XVI. See 42 U.S.C. § 1382c(a)(3). Eligibility for benefits under the Act is conditioned upon compliance with all relevant requirements of the

statute.  SSI may not be paid unless the claimant meets the income and resource

limitations of 42 U.S.C. §§ 1382a and 1382b.  Further, a claimant must demonstrate an

inability

> to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months . . . .

42 U.S.C. § 1382c(a)(3)(A).

The statute further requires that an individual will be determined to be under a

disability

> only if his physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot, considering his
> age, education, and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy . . . .

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential analysis for determining whether

an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Apfel,

204 F.3d 48, 48–49 (2d Cir. 1999); Bush v. Shalala, 94 F.2d 40, 44–45 (2d Cir. 1996).

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner] next
> considers whether the claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work activities.  If the claimant
> suffers such an impairment which is listed in Appendix 1 of the regulations,
> [t]he [Commissioner] presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.  Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether,
> despite the claimant's severe impairment, he has the residual functional
> capacity to perform his past work.  Finally, if the claimant is unable to
> perform his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Barry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

11

A claimant bears the burden of proof at steps one through four.  Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999); Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); see also 20 C.F.R. § 416.920(f); 68 Fed. Reg. 51317 (August 26, 2003).  At step five, the burden shifts to the Commissioner to prove that there is other work that exists in significant numbers in the national economy that Plaintiff can perform. 20 C.F.R. § 416.920(g).

Following a thorough consideration of the evidence of record, the ALJ found, at step one of the sequential evaluation process, that Plaintiff had not engaged in substantial gainful activity since he applied for SSI. (R. 13).  At step two, he found that Plaintiff's undifferentiated somatoform disorder, personality disorder, osteoarthritis of the knees, morbid obesity and low back disorder were severe impairments. Id.  At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, which met or equaled the criteria of any listed impairment. (R. 16).  Next, the ALJ found that Plaintiff retained the residual functional capacity to perform light work that limited him to simple, routine, repetitive tasks not performed in a fast-paced production environment and involving only simple work-related decisions. (R. 17, 22).  Plaintiff was also precluded from activities that required frequent squatting or kneeling. (R. 17).  At step four, the ALJ found that Plaintiff did not have any past relevant work and proceeded to step five where he found that based on his age, education, and residual functional capacity, Plaintiff retained the ability to perform a number of jobs which existed in significant numbers in the national economy. (R. 22-23).  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. Id.

## VI.    DISCUSSION

Plaintiff raises three primary arguments on appeal: one, the ALJ erred as a matter

of fact and law in determining that Mr. Knepp was not disabled by his morbid obesity, his osteoarthritis, and by his mental illness; two, the ALJ erred in not crediting Mr. Knepp's testimony about his pain and limitations; and three, the ALJ erred in not giving sufficient weight to the opinions of the long-time treating nurse practitioner, the consultative psychologists, and the DSS nurse.  The Court will address the arguments *seriatim*.

### a.   Combination of Conditions Resulting in Disability

Plaintiff first argues that the ALJ erred as a matter of fact and law in determining that Mr. Knepp was not disabled by his morbid obesity, his osteoarthritis, and by his mental illness.  The Court disagrees.

At step three, Plaintiff bears the burden of presenting medical findings showing that his impairments meet or equal a listed impairment. Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999); Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); see also 20 C.F.R. § 416.920(f). Additionally, Plaintiff must show that he met all of the specified criteria of the listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify.). An impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 416.926(a).  The standard for medical equivalence is set forth in 20 C.F.R. § 416.926.

Plaintiff has identified no evidence of medical findings from any of his impairments, singly, or in combination, that are equivalent to an analogous listed impairment. See Zebley, 493 U.S. at 531 (to show medical equivalence, Plaintiff "must present medical findings equal in severity to all the criteria for the one most similar listed impairment."). The ALJ considered all of Plaintiff's impairments and found that none satisfied the criteria of

13

any listing. (R. 16-17).

Plaintiff has cited no medical evidence to support his claim that his obesity, singly, or in combination with his other impairments, was of listing-level severity. The ALJ specifically discussed Plaintiff's obesity and noted that the record does not reflect additional limitations as a result of this condition. (R. 19). In fact, Plaintiff was encouraged to remain active and increase his walking. Id.

Similarly, the evidence does not support Plaintiff's contention that he was disabled by his osteoarthritis, either singularly or in combination with Plaintiff's obesity and mental conditions. On April 17, 2006, PA Frostiuc noted that Plaintiff had full range of motion in both knees and, despite Plaintiff's weight and long standing complaints of bilateral knee pain, opined that Plaintiff could occasionally lift up to thirty pounds, stand and/or walk for up to two hours per day and had no sitting limitations. (R: 254-56, 258, 261).  In May of 2006,  Plaintiff was orthopedically examined by Dr. Nader Wassef who noted that Plaintiff's grip strength was five out of five ("5/5") bilaterally, (R: 227), Plaintiff's spine had a normal range of motion as did all of his extremities, (R:  227-28), there was no muscle atrophy and no sensory abnormality, (R:  228), and an x-ray of the knee was normal prompting Dr. Wassef to opine that Plaintiff's knee pain "etiology was not very clear to" him. Id. Based on his examination, Dr. Wassef was not able to detect evidence of physical limitations in the hand, spine or any of the extremities. Id.

On June 12, 2007, Plaintiff was examined by Dr. Eugene Byrne at the Lake Placid Health Center for complaints of left knee pain. (R. 15, 276-77).  Dr. Byrne found that the left knee had no significant swelling, (R. 276), and while the knee had tenderness in the medial and lateral joint and the peripatellar area, the neurologic exam was intact to light

14

touch in the left leg. Id. The knee was grossly neurovascularly intact. Id. Strength in the quadriceps was just about full and hamstrings strength was full as well. Id.  An x-ray of the left knee revealed no fractures and evidence of early arthrosis in the patellofemoral joint. Id. Dr. Byrne recommended Plaintiff start physical therapy, take Aleve as needed, and use a pull-on brace for support. (R. 277).  All of this provides sufficient evidence supporting the ALJ's determination that Plaintiff was not disabled by his osteoarthritis or knee problems.

The evidence also does not support Plaintiff's contention that he was disabled under Listing § 12.07 (somatoform disorders). Pl.'s Brf. at 23-26.  Listing § 12.07 requires that Plaintiff show physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms. 20 C.F.R., Part 404, Subpt. P, App. 1, § 12.07.  There are demonstrable organic findings or known physiological mechanisms in the record for Plaintiff's complaints of knee and back pain.  Moreover, the evidence fails to support a finding under § 12.07B which requires that Plaintiff show two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or, repeated episodes of decompensation, each of extended duration. 20 C.F.R., Part 404, Subpt. P, App. 1, § 12.07B.  The record failed to support that Plaintiff had marked difficulties in activities of daily living in that there was substantial evidence that Plaintiff took care of his personal needs, prepared his own meals, did his own laundry, grocery shopped and handled his finances.  While Plaintiff admitted he isolated himself from others, he socialized with his friend who drove him to where he needed to go, and he maintained contact with several representatives from the Social Security Administration through e-mails or letter writing.

In addition, Dr. Weiss, the State agency physician, found that Plaintiff was only mildly restricted in his activities of daily living and in social functioning. (R. 246). With regard to concentration, persistence or pace, although Dr. Liotta opined in November 2005 (three months prior to the relevant time period) that Plaintiff had a Global Assessment Functioning score of 45, he also opined that Plaintiff's ability to concentrate did not appear to be particularly impaired. (R. 214). Similarly, Dr. Hartman opined that Plaintiff's attention and concentration were only mildly impaired. (R. 223, 224). Dr. Weiss found that Plaintiff was only moderately, not markedly, impaired in his ability to maintain concentration, persistence or pace. (R. 246). Plaintiff does not argue that he has had repeated episodes of decompensation. See 20 C.F.R., Part 404, Subpt. P, § 12.07B(4). Thus, because Plaintiff's somatoform disorder did not result in two marked difficulties under § 12.07B, it did not meet Listing § 12.07. Tr. 16-17.

Based upon the above, the Court finds that there was substantial evidence in the record to support the ALJ's step three finding, and therefore must be upheld..

### b.  Credibility of Plaintiff's Complaints of Pain and Limitations

Next, Plaintiff argues that the ALJ erred by failing to credit his testimony about his pain and limitations.  The Court disagrees.

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  If the findings "are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."  Aponte v. Secretary, Dep't of Health & Human Services, 728 F.2d 588, 591 (2d Cir. 1984); see also

McLaughlin v. Secretary of Health, Education and Welfare, 612 F.2d 701, 704 (2d Cir. 1982).  Where a claimant alleges symptoms of a greater severity of impairment than can be shown by objective medical evidence, other evidence will be considered, including claimant's daily activities and the medications, methods and treatments used to alleviate her symptoms.  20 C.F.R. § 416.929(c)(3).  It is the function of the Commissioner, not the reviewing court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  Caroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 642 (2d Cir. 1983).

In finding that Plaintiff retained the residual functional capacity for light work that limited him to simple, routine, repetitive tasks not performed in a fast-paced production environment and involving only simple work-related decisions, the ALJ relied on the medical opinions and objective medical findings of record. (R.  22).  For example, Dr. Byrne examined Plaintiff for complaints of left knee pain in June 2007 and found that the left knee had no significant swelling, and, while the knee had tenderness in the medial and lateral joint and the peripatellar area, the neurologic exam was intact to light touch in the left leg, the knee was grossly neurovascularly intact, strength in the quadriceps and hamstrings were just about full, and an x-ray of the left knee revealed no fractures and evidence of early arthrosis in the patellofemoral joint. (R. 276)   Dr. Byrne recommended Plaintiff start physical therapy, take Aleve as needed, and use a pull-on brace for support. (R 277).

Similar findings were made by Dr. Wassef in his May 2006 physical examination. (R. 227).  Dr. Wassef opined that he could not detect any evidence of physical limitations in the upper extremities or anywhere in the spine. (R. 21, 227-28).  Significantly, although

17

Plaintiff alleged he could not walk or stand for long periods of time, Dr. Wassef could not detect physical limitations in the lower extremities either. (R. 21, 228).

The physical examination of Plaintiff by David Frostiuc, a certified physician's assistant, in April 2006 yielded similar results. (R. 254-63).  Noting Plaintiff's full range of motion in both knees, Mr. Frostiuc opined that Plaintiff could occasionally lift up to thirty pounds, stand and/or walk for up to two hours per day and had no sitting limitations. (R. 254-56, 258, 261).  Plaintiff also testified that he took Tylenol for his back pain, and used a hair dryer to warm his knee and relieve pain.

Based upon this evidence, the Court concludes that the ALJ's determination to discount Plaintiff subjective complaints of pain are supported by substantial evidence, and therefore must be upheld.

For similar reasons, the Court upholds the ALJ's decision to discount Plaintiff's subjective complaints of mental limitations impacting his ability to work.  Mr. Frostiuc opined that Plaintiff had no limitations with understanding, memory, sustained concentration and persistence, social interaction or adaption. (R.  262).  Dr. Hartman concluded that Plaintiff was able to follow and understand simple directions and instructions. (R. 224). He also concluded that Plaintiff had a fair ability to learn new tasks and make appropriate decisions, had mild attention and concentration problems, and had mild difficulty maintaining a regular schedule. Id.  Dr. Hartman also opined that Plaintiff would likely have only mild to moderate difficulty dealing appropriately with the normal stressors of life. Id.

Dr. Weiss, who reviewed the record noting both somatoform and personality disorders, opined that Plaintiff had only mild restrictions of daily living and mild difficulties

18

in maintaining social functioning.  (R. 236, 246, 250, 252).  He also concluded that Plaintiff

had only moderate, not marked, difficulties in maintaining concentration persistence or

pace. (R. 246, 250). Plaintiff had no episodes of deterioration. Id. In his narrative, Dr.

Weiss opined that Plaintiff was able to understand, remember, and carry out simple

instructions, and was able to interact appropriately with co-workers and supervisors and to

make simple decisions. Id. Dr. Weiss concluded that Plaintiff was not markedly impaired in

his ability to maintain attendance and pace or to complete a normal workweek secondary

to his psychiatric symptoms. Id.  An opinion of a non-examining source, such as a State

agency physician, can constitute substantial evidence in support of an ALJ's

determination.  See Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).

 Based upon the medical opinions set forth above, the Court finds that there was

substantial evidence supporting the ALJ's conclusion that, despite Plaintiff's contention to

the contrary, Plaintiff retained the mental ability to perform work-related activities albeit

with a limitation on his ability to work in a faced-paced environment.

There is also no merit to Plaintiff's contention that, in light of Plaintiff's assertions of

non-exertional impairments of pain and mental illness,[3] the ALJ erred by not consulting a

vocational expert before determining that Plaintiff had the RFC to perform a wide range of

light work.  As Magistrate Judge Bianchini recently explained,

---

[3]"Non-exertional limitations refer to limitations affecting the claimant's ability to meet the requirements of a job other than strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c). This includes, inter alia, limitations or restrictions in functioning due to nervousness, anxiety or depression, maintaining attention or concentration, understanding or remembering detailed instructions, and performing manipulative or postural functions such as reaching, handling, stooping, climbing, crawling, or crouching." Crysler v. Astrue, 563 F. Supp.2d 418, 438, n. 18 (N.D.N.Y. 2008); see also Sobolewski v. Apfel, 985 F. Supp. 300, 310 (E.D.N.Y.1997) ("A nonexertional limitation is one imposed by the claimant's impairments that affect [his or] her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.").

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering [his] physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

* * *

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir. 1986).

Kelly v. Astrue, 2011 WL 817507, at *12-*13 (N.D.N.Y. Jan. 18, 2011)(Rep-Rec. & Ord.);

see also Crysler v. Astrue, 563 F. Supp.2d 418, 438-39 (N.D.N.Y. 2008).

"In order to 'significantly diminish' the claimant's range of work, a non-exertional impairment must cause an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him [or her] of a meaningful employment opportunity.'" Crysler, 563 F. Supp.2d at 439 (quoting Bapp, 802 F. 2d at 606 n. 1). Thus, the "'mere existence of a nonexertional impairment [will] not automatically require the production of a vocational expert nor preclude reliance on the guidelines.'" Davila v. Barnhart, No. 03 Civ. 3981, 2004 WL 2914073, at *7 (S.D.N.Y. Dec. 15, 2004)(quoting Bapp, 802 F. 2d at 603).

Here, there was substantial evidence supporting the conclusion that Plaintiff's ability to perform work was not significantly diminished due to the presence of a non-exertional

impairment. <u>See</u> R. 23.[4]  Thus, there was no basis for the Commissioner to "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." <u>Bapp</u>, 802 F. 2d at 603.

### c. Weight Afforded to the opinions of Plaintiff's nurse practitioner, the consultative psychologists, and the DSS nurse.

There is no merit to Plaintiff's contention that the ALJ erred by failing to give controlling weight to Nurse Practioner Verna Pedersen's opinions.  First, NP Pedersen's opinions were rendered prior to the relevant time period at issue in this case and thus could have been disregarded.  Second, only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight. <u>See</u> 20 C.F.R. § 416.927(d); SSR 06-03p.  Nurse practitioners are not "acceptable medical sources." <u>Id.</u>  Rather, nurse practitioners are considered to be "other sources" as defined in 20, C.F.R. § 416.913(d).  Accordingly, NP Pedersen's opinions were not entitled to controlling weight.  Further, it should be noted that the ALJ did consider NP Pedersen's opinions, including that Plaintiff was "not sick, just overweight and deconditioned," and that she encouraged him to remain active, walk more, and attend physical therapy but Plaintiff

---

[4]The ALJ concluded:

Although the record shows that claimant has some mental limitations, the evidence establishes that he is able to meet the basic mental demands of competitive, remunerative, unskilled work.  These demands include the ability to understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled work - i.e., simple work-related decisions; respond to routine work setting (Social Security Ruling 96-9p).  Furthermore, his limitations with respect to no frequent squatting or kneeling would not have a significant impact on his occupational base (SSR 85015).  The Administrative Law Judge finds that the additional limitations have little or no effect on the occupational base of unskilled light work.  A finding of "not disabled" is therefore appropriate under the framework of this rule.

failed to follow her recommendations.  (R. 18-19, 20-21).  To the extent that this treating source's opinion impacted the determination of whether Plaintiff was disabled by his physical condition and obesity, the ALJ gave the opinion appropriate weight.

Likewise, the ALJ did consider Dr. Liotta's opinion although rendered before Plaintiff filed his current SSI application. (See R. 14).  It was not error for the ALJ to accord Psychiatrist Hartman's opinion great weight inasmuch as Dr. Hartman actually evaluated Plaintiff during the period in issue by Plaintiff's current SSI application.

Finally, there is no merit to the contention that the ALJ erred in failing to consider DSS Nurse Michelle LaDuke's opinions contained in her February 22, 2008 letter. LaDuke's opinions as to Plaintiff's disability and ability to work are observational at best and amount to merely a recitation of the other evidence presented to the ALJ from other acceptable medical sources.

## VII.   CONCLUSION

For the reasons set forth above, the Commissioner's determination in this matter is **AFFIRMED**.

**IT IS SO ORDERED**

DATED:  March 30, 2011

Thomas J. McAvoy
Senior, U.S. District Judge

22